UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| ARTHUR WHITEHEAD | CIVIL ACTION |
|---|---|
| VERSUS | NO. 14-302-JWD-RLB |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the findings of fact and conclusions of law recommended by the Magistrate Judge. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on July 20, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ARTHUR WHITEHEAD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-302-JWD-RLB** |
| **CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>THE SOCIAL SECURITY<br>ADMINISTRATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Arthur Whitehead (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act" (Tr. 131-34).[1] For the reasons given below, the Court recommends that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

**I.   PROCEDURAL HISTORY**

On December 29, 2011, Plaintiff filed an application for disability insurance benefits. (Tr. 63, 131-34). Plaintiff alleged that he became disabled as of August 15, 2010[2] because of high blood pressure, depression, anxiety, chronic pain, poor hearing and vision, knee problems, sleep

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

[2] Plaintiff asked to amend his August 15, 2010 alleged onset date to June 15, 2011 when he sought review of the ALJ's decision before the Appeals Council. (Tr. 215). Any change in the alleged onset date is immaterial, however, because the Court finds substantial evidence supports the ALJ's finding that Plaintiff was not disabled between August 15, 2010 and January 25, 2013.

apnea, cervical disc disease, and an artery blockage in his neck and heart. (Tr. 63-64). The claim was initially denied (Tr. 62) and Plaintiff filed a timely request for a hearing, which was held on November 6, 2012. (Tr. 40-61). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 40-53). Thomas Monet, a Vocational Expert (VE), also provided testimony. (Tr. 53-61).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on January 25, 2013. (Tr. 24-34). The ALJ found that Plaintiff had not been under a disability from the alleged onset date of August 15, 2010 through January 25, 2013, the date of the decision. (Tr. 34). Plaintiff's first request for review was denied by the Appeals Council on February 12, 2014. (Tr. 7-11). After receiving additional evidence from Plaintiff, the Appeals Council considered and likewise denied Plaintiff's second request for review on April 23, 2014. (Tr. 1-5). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e))). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ issued an unfavorable decision based on the evidence contained in the administrative record. Specifically, the ALJ found:

1.  Plaintiff met the insured status requirements of the Act through December 31, 2015.

2.  Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

3.  Plaintiff's cervical spine disease qualified as a severe impairment. However, the following impairments were not severe: hypertension, sleep apnea, artery blockage in the neck and heart, depression and anxiety.

4.  Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the Listings, specifically Listing 1.04 (Disorders of the Spine).

5.  Plaintiff had the residual functional capacity to perform light work, but he could not climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch and crawl; and should avoid reaching overhead with his right (dominant) extremity.

6.  Plaintiff could no longer perform any past relevant work.

7.  Plaintiff was a younger individual (between the ages of 45 and 49) on the alleged onset date of August 15, 2010. However, Plaintiff subsequently changed age categories to "closely approaching advanced age" once he became 50 years old.

8.  Plaintiff had a high school education and was able to communicate in English.

9.  Application of the GRIDS meant the transferability of job skills was not material to the ultimate issue of disability.

10. Given Plaintiff's age, education, work experience and RFC, there were jobs existing in the national economy that he could perform, specifically: Food preparation worker (DOT No. 311.472-010); Housekeeping cleaner (DOT No. 323.687-014); and Information clerk (DOT No. 237.367-018).

(Tr. 26-34).

## IV. DISCUSSION

On appeal, Plaintiff raises several assignments of error in support of his claim. First, Plaintiff suggests the ALJ committed legal error at Step 3 by failing to explain her adverse finding that Plaintiff did not meet Listing 1.04A (Disorders of the Spine). (R. Doc. 12 at 8). Second, Plaintiff contends the "ALJ's [RFC] rationale for a full range of light work was based upon mischaracterizations of fact and is refuted by substantial evidence." (R. Doc. 12 at 8).

Finally, Plaintiff claims the Appeals Council "failed to properly evaluate new and material evidence and perfunctorily adhered to the ALJ's decision." (R. Doc. 12 at 8).

## A. Appeals Council

Plaintiff argues that the Appeals Council committed reversible error by not giving a written evaluation of new and material evidence submitted by Plaintiff — updated treatment records from Dr. Jorge Isaza and Interrogatory Responses from vocational expert, Todd Capielano. (R. Doc. 12 at 17-18); (Tr. 221-22, 426-28). In Plaintiff's mind, this new evidence "refuted the ALJ's rationale for denying this case at Steps 3 and 5." (R. Doc. 12 at 17). Despite this, Plaintiff suggests, the Appeals Council merely looked at the new evidence before "summarily concluding" that it did not warrant remand of Plaintiff's application to the ALJ. (R. Doc. 12 at 17). Plaintiff argues that the Appeals Council was required to provide an evaluation of this evidence and its failure to do so affected his substantial rights.

Under the regulations, if a claimant is "dissatisfied" with an ALJ's decision, he or she "may request" review by the Appeals Council. 20 C.F.R. § 404.967. When a claimant requests review, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to [the ALJ]." *Id*. The regulations specifically permit claimants to submit additional evidence, not before the ALJ, to the Appeals Council to consider along with the request for review. 20 C.F.R. §§ 404.968(a), 404.970(b). In those cases, the Appeals Council first determines if the submission is "new and material" evidence that "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b). For purposes of this appeal, the Court assumes Plaintiff's updated treatment records from Dr. Isaza and the Mr. Capielano's Interrogatory Responses constitute new and material evidence.

When confronted with new and material evidence, the Appeals Council then "evaluate[s] the entire record including the new and material evidence." 20 C.F.R. § 404.970(b). If the Appeals Council finds that the ALJ's conclusion is contrary to the weight of the current record evidence, it will grant the request for review and either issue a decision or remand the case to the ALJ. 20 C.F.R. §§ 404.967(b), 404.979. But if the weight of the evidence in the current record is still consistent with the ALJ's decision, the Appeals Council can simply deny the request for review.

Contrary to Plaintiff's contention, nothing in the Act or regulations requires that the Appeals Council explain its rationale for denying review. Instead, the Act does not require the Appeals Council to do anything more than what it did here — state that it considered new and material evidence in deciding whether to grant review. The Appeals Council's Order and Exhibit List specifically reference the new material from Dr. Isaza and Mr. Capielano, along with briefing submitted by Plaintiff. (Tr. 4, 5, 10, 11). The decision of the Appeals Council stated "we considered . . . the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2, 7-8). Nothing more is required. *See Cantrell v. McMahon*, 227 F. App'x 321, 323 (5th Cir. 2007) (Appeals Council adequately considered evidence submitted on appeal where "In its order, the Appeals Council specifically stated it had considered the additional evidence and found it did not warrant changing the ALJ's disability decision."); *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006) (finding "nothing in the statutes or regulations" requires the Appeals Council to explain its evaluation when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting argument that Appeals Council must "make its own finding"

and "articulate its own assessment" of new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988-89 (7th Cir. 1991) ("Since the . . . regulations do not require an explanation of the grounds for rejection, we hold that the Appeals Council may deny review without articulating its reasoning," even when new and material evidence is submitted.).

Although the additional evidence from Dr. Isaza and Mr. Capielano did not warrant relief by the Appeals Council, it was made part of the record. (Tr. 268-70). The Court must consider it, along with the record before the ALJ, when determining whether substantial evidence supports the final decision of the Commissioner. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

### B. Listing 1.04A

At step 3, the ALJ found Plaintiff's impairments were insufficiently severe to meet Listing 1.04A because the record did not contain evidence of nerve root compression or "an inability to ambulate effectively." (Tr. 28). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that exhibits only some of the criteria, no matter how severe, does not qualify. *Sullivan*, 493 U.S. at 529-32. Listing 1.04A applies to disorders of the spine and is described as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A. The ALJ found that Listing 1.04A was not met, in part, because "the medical evidence does not establish the requisite evidence of nerve root compression" and "there is no evidence that [Plaintiff's] back disorder has resulted in an inability to ambulate effectively." (Tr. 27-28).

Plaintiff now argues that the ALJ's listing analysis "is inadequate and, moreover, her interpretation of the evidence as well as her conclusions are frought [*sic*] with misstatements of fact." (R. Doc. 12 at 10). According to Plaintiff, he meets Listing 1.04A as the record shows "cervical disc herniation at C5-6 and C6-7 with a syrinx in the spinal cord with clear clinical evidence of spinal cord compression vis-a-vis limited ROM, reflex and sensory loss and motor weakness." (R. Doc. 12 at 10). The ALJ, in Plaintiff's view, ignored this evidence and failed to explain her rationale at Step 3 warranting remand.

Although Plaintiff insists that, contrary to the ALJ's finding, the record contains evidence of spinal cord compression, his medical records do not indicate compression or impingement of the spinal cord, as required to meet Listing 1.04A.

Dr. Jorge Isaza, an orthopedic surgeon, consistently treated Plaintiff's spinal condition following a work-related injury in August of 2010. (Tr. 347-67, 382-85, 424-28). During his second examination of Plaintiff on September 13, 2010, Dr. Isaza ordered objective imaging (and MRI) and further testing (a nerve conduction study) of Plaintiff's cervical spine because Plaintiff's symptoms were suggestive of nerve root compression. (Tr. 362-63). These objective tests, however, found no evidence of nerve root compression.[3] The September 22, 2010 MRI showed no evidence of central canal stenosis (Tr. 360, 368-69) and the October 27, 2010 nerve

---
[3] Similar to Dr. Isaza's September 13, 2010 records, consultative examiner Dr. Herman Toliver also noted that Plaintiff' symptoms might suggest nerve root compression, but he made no definitive finding. (Tr. 395). Unlike Dr. Isaza, however, Dr. Toliver did not have the benefit of reviewing the MRI or nerve conduction study finding no evidence of nerve root compression.

conduction study found no evidence of cervical radiculopathy and only mild median nerve irritation. (Tr. 358). Both the absence of stenosis and cervical radiculopathy support the ALJ's conclusion that Plaintiff did not suffer from nerve root compression. *See Nieves v. Astrue*, No. 12-690, 2013 WL 1192013, at *5 (W.D. Tex. March 21, 2013) (A "severe" rating of stenosis signifies that there . . . is at least moderate compression of the nerve root. . . . A rating of moderate indicates that there may be mild compression of the nerve root."); *Spratley v. Astrue*, No. 07-1264, 2008 WL 5330563, at *7 (S.D. Miss. Dec. 12, 2008) ("The record is clear that Spratley's spinal disorder was characterized by nerve root compression. Spratley submitted the records . . . which revealed that Spratley suffered from spinal stenosis."); *Green v. Astrue*, 2009 WL 310284, at *2 (D. Az. Feb. 6, 2009) (considering a diagnosis of cervical radiculopathy as evidence of nerve root compression); *Smith v. Astrue*, 2011 WL 722539, at *11 (N.D. Ill. Feb. 22, 2011) (Consistent with testimony given by the SSA's medical expert, the court found that because the claimant's "December 2005 EMG test was compatible with chronic radiculopathy," it was "indicative of nerve root compression."); *Belardino v. Barnhart*, 2005 WL 2397182, at *3-4 (E.D. Penn. Sept. 26, 2005) (medical expert's testimony that the claimant's "medical records . . . did not support a diagnosis of lumbar radiculopathy because there was no evidence of nerve root compression" was substantial evidence to support ALJ's adverse finding).

Dr. Isaza's medical records also note that Plaintiff was negative for Hoffmann's Sign throughout his treatment — further indicating an absence of spinal cord compression. (Tr. 351, 356, 366, 426-27) (Hoffmann's Sign was negative between August 20, 2010 and June 5, 2012). *Haugen v. Astrue*, 497 F. Supp. 2d 1315, 1323 n.13 (N.D. Ala. 2007) ("Hoffman's sign is a neurological sign in the hand which is an indicator of problems in the spinal cord. It is associated with a loss of grip. . . . A positive Hoffman's . . . is an indicator of . . . spinal cord

compression."); *see also Paulus v. Colvin*, 2014 WL 1513957, at *10 n.34 (M.D. Penn. April 16, 2014) ("The Hoffman's sign is a neurological sign in the hand which is suggestive of spinal cord compression."); *Shaw v. Colvin*, 2013 WL 3546665, at *9 n.20 (E.D. Mo. July 11, 2013) ("A positive Hoffman's sign is indicative of an upper motor neuron lesion from spinal cord compression."); *Richardson v. Astrue*, 2011 WL 3555735, at * n.2 (D. Vt. Aug. 11, 2011) ("Hoffman's sign is present if tapping the nail on the third or fourth finger elicits involuntary flexion of the distal phalanx of the thumb and index finger, which indicates spinal cord compression.").

The only report of "cord compression" in the record comes from Dr. Maury Drummond's treatment notes, whose opinion was appropriately rejected by the ALJ. Plaintiff now argues that the ALJ erred in discounting Dr. Drummonds treatment records and April 3, 2012 Medical Source Statement reporting nerve root compression. (R. Doc. 12 at 11-13); (Tr. 373-74, 376, 381, 422).

Dr. Drummond, a general practitioner, treated Plaintiff on only 3 occasions — March 19, 2009, July 24, 2009 and January 13, 2012. (Tr. 373-74, 376, 381). According to the record, Dr. Drummond did not treat Plaintiff in connection with his cervical spine. (Tr. 53). Plaintiff's final visit to Dr. Drummond on January 13, 2012 occurred about two and half years from his previous visit and almost a year and a half after his August 2010 neck injury. (Tr. 373-74). Dr. Drummond's January 13, 2012 notes indicate that Plaintiff "presented with fill out papers" for his disability application at his "checkup." (Tr. 373). Under 'chief complaint/history of present illness,' Dr. Drummond documents Plaintiff's subjective reports of "severe cervical radiculopathy" and "cord compression." (Tr. 373). Later on April 3, 2012, Dr. Drummond provided a Medical Source Statement in connection with Plaintiff's disability application

claiming that Plaintiff (1) suffers from "very severe cervical disc disease and general osteoarthritic," (2) is in "constant pain . . . secondary to spinal cord impingement," (3) "has difficulty with ambulation because of severe pain not just in his neck but also in his lower spine," and (4) "should be considered completely disabled." (Tr. 422).

Aside from the January 13, 2012 notation of Plaintiff's subjective history, Dr. Drummond's exam notes show that he did not conduct any clinical or otherwise objecting testing that might confirm the existence of "severe cervical radiculopathy" or "cord compression." (Tr. 373-74, 376, 381). It appears that Dr. Drummond also did not review the results of Plaintiff's MRI or nerve conduction study, both of which contradict Plaintiff's self-reports of "severe cervical radiculopathy" and "cord compression." As explained above, these tests found "no evidence of cervical radiculopathy" or stenosis and made no findings of nerve root compression. (Tr. 358) (nerve conduction study found no evidence of cervical radiculopathy); (Tr. 360-61) (MRI found no evidence of central canal stenosis). And so, the ALJ appropriately discredited Dr. Drummond's treatment records and Medical Source Statement indicating the presence of cervical radiculopathy and cord compression.[4]

Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff could not meet Listing 1.04A because the record did not contain the requisite evidence of nerve root compression.

---

[4] The ALJ's rejection of Dr. Drummond's statements about Plaintiff's lower back pain and complete disability was likewise appropriate. First, the record does not support a finding that Plaintiff suffers from any lower back pain. To the contrary, Plaintiff consistently told his treating physicians and the ALJ during the hearing that he does not suffer from lower back pain. (Tr. 47) (ALJ: "Is there anything wrong with your back, low back?"; Plaintiff: "It's just my neck."); (Tr. 336) (Dr. Barnabas Fote on June 9, 2011 – "Denies lower back pain."); (Tr. 347) (Dr. Jorge Isaza on November 16, 2011 – "He is not having any low back pain."); (Tr. 393) (Dr. Herman Toliver on March 3, 2012 – "Denies lower back pain."). In addition, Dr. Drummond's opinion that Plaintiff is completely disabled concerns an issue reserved for the Commissioner and is not entitled to any weight. It is also inconsistent with the record as a whole.

## C. Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ found Plaintiff was capable of performing light work, but with the following limitations: (1) Plaintiff "cannot climb ladders, ropes, and scaffolds"; (2) Plaintiff should avoid overhead reaching with his right upper extremity; and (3) Plaintiff can occasionally stoop, kneel, crouch and crawl. (Tr. 28).

Plaintiff claims that the "ALJ summarily assessed an RFC for what was effectively a full range of light work," which was erroneously "based upon mischaracterizations of fact and is refuted by substantial evidence." (R. Doc. 12 at 13). Specifically, Plaintiff claims that the ALJ ignored the 10 pound lifting restriction assessed by consultative examiner Dr. Herman Toliver and the DDS consultant at the initial level, which would preclude the performance of light work. (R. Doc. 12 at 14-15); (Tr. 392-96, 408). Plaintiff additionally claims that both (a) the evidence of decreased grip strength in his right hand, and (b) the 2-4 hour standing restriction, preclude the performance of light work. (R. Doc. 12 at 15). Both of these restrictions are found in the

Functional Capacity Exam (FCE) ordered by Plaintiff's treating physician Dr. Isaza, whose opinion was given great weight by the ALJ. (R. Doc. 12 at 15).

In assessing Plaintiff's RFC, the ALJ noted and thoroughly discussed the record's conflicting opinions on Plaintiff's physical limitations. Non-examining DDS consultant found that Plaintiff could frequently carry up to 9 pounds. (Tr. 408). On March 3, 2012, consultative examiner Dr. Toliver "suggest[ed]" that Plaintiff should "not [be] lifting more than 5 to 10 pounds at this time." (Tr. 395). The opinions of the non-examining DDS consultant and the one-time consultative examiner were both contradicted, however, by Plaintiff's treating orthopedic surgeon, Dr. Jorge Isaza. (Tr. 347, 348, 349, 382-85, 386-390, 424-25, 426, 427, 428).

Dr. Isaza ordered an FCE of Plaintiff's functional limitations, which took place on July 29, 2011. (Tr. 386-90). Although the FCE noted physical limitations caused by Plaintiff's impairments, including significantly decreased grip strength in Plaintiff's right hand, he was still found capable of performing light duty work. (Tr. 387). Specifically, in an 8-hour workday, Plaintiff was capable of:

> (a) Occasionally lifting or carrying up to 20 pounds;[5]
> (b) Frequently lifting or carrying up to 10 pounds;[6]
> (c) Frequently walking;
> (d) "Low frequent" "static" standing (2-4 hours);
> (e) Occasionally bending, stooping, reaching, squatting, kneeling and crouching;[7] and
> (f) Rarely crawling.

(Tr. 387, 390). Finally, the FCE concluded that Plaintiff "could return back to some form of gainful employment with the restrictions as listed." (Tr. 388).

From the time he reviewed the FCE on August 10, 2011, until his December 27, 2012 Medical Source Statement, Dr. Isaza consistently adopted the restrictions outlined in the FCE as

---

[5] "Occasionally" meant the activity could be performed for up 1/3 of an 8-hour workday. (Tr. 390).
[6] "Frequently" meant the activity could be performed for up to 2/3 of an 8-hour workday. (Tr. 390).
[7] These activities were "limited with . . . pain." (Tr. 390).

an accurate representation of Plaintiff's abilities. (Tr. 347, 348, 349, 382-85, 424-25, 426, 427, 428). Since August 10, 2011, Dr. Isaza has likewise urged that Plaintiff "would be a good candidate for vocational rehab" and was capable of "regain[ing] some type of gainful employment" within the "restrictions [] outline in his FCE." (Tr. 347, 348, 349, 424-25).

Despite Plaintiff's arguments to the contrary, substantial evidence supports the ALJ's decision to give great weight to the opinion of Dr. Isaza. Dr. Isaza is an orthopedic specialist who began treating Plaintiff on August 20, 2011 for musculoskeletal issues resulting from an August 15, 2010 neck injury. (Tr. 364-67). Since that time, Dr. Isaza provided consistent and frequent treatment of Plaintiff's musculoskeletal impairments. (Tr. 347, 348, 349, 350, 351-52, 353-54, 355, 356-57, 358, 359, 360-61, 362-63, 364-67, 382-85, 424-25, 426, 427, 428) (record shows 18 instances of treatment by Dr. Isaza between August 20, 2011 and December 27, 2012). Dr. Isaza also ordered and reviewed the comprehensive and detailed FCE, in addition to objecting testing (an MRI and nerve conduction study), to better understand and treat Plaintiff's musculoskeletal impairments. (Tr. 358, 360-61, 362-63, 368-69, 386-90).

Given the length, frequency and nature of Dr. Isaza's treatment, the ALJ appropriately qualified him as a treating physician. *Huet v. Astrue*, 375 Fed. Appx. 373, 376 (5th Cir. 2010) ("[I]f the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).'"). By contrast, Dr. Toliver was hired by SSA to examine Plaintiff on one occasion in connection with his application for disability benefits. (Tr. 391-96). Based on his report, it appears that Dr. Toliver did not have the benefit of reviewing any of Plaintiff's treatment records, including the FCE, MRI and nerve conduction study. (Tr. 391-96). The DDS consultant, Dr. Jeffery Nugent,

did not examine Plaintiff; instead, he reviewed Plaintiff's medical records before providing an opinion. (Tr. 408).

Under Fifth Circuit precedent, "the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician." *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."). This principle is most "relevant where there is a conflict in the medical evidence." *Carry*, 750 F.2d at 484. But ultimately, conflicts in the medical evidence should be resolved by the Commissioner, not the courts. *Oldham v. Schweiker*, 660 F.2d 1078, 1085 (5th Cir. 1981).

Here, Dr. Isaza's opinion conflicted with that of Dr. Toliver and the DDS consultant. The ALJ ultimately gave great weight to the opinion of Dr. Isaza, not only because he was a treating specialist, but because his opinion was consistent with the overall record. (Tr. 29-30). For example, the record contains evidence that Plaintiff demonstrated full grip strength in both hands, full strength in both upper extremities, full strength in the left upper extremity, 2+ deep tendon reflexes bilaterally and no signs of atrophy were found. (Tr. 337, 338, 347, 351-52, 356-57, 394, 426, 427). Moreover, Plaintiff denied weakness and low back pain during examinations. (Tr. 336, 337, 347, 381, 393). Plaintiff demonstrated normal gait, station, tip-toe and heel walk. (Tr. 337, 338, 351-52, 356-57, 388, 394). Straight leg raise testing was negative and Plaintiff had full strength in his lower extremities. (Tr. 338, 394). Plaintiff also received mostly conservative treatment and declined injection treatments recommended by his doctor. (Tr. 424-25, 426, 427, 428). *See Franzen v. Astrue*, 555 F. Supp. 2d 720, 730-31 (W.D. Tex. 2008) (affirming denial of benefits and noting ALJ considered, among other things, that "plaintiff had

received . . . conservative care" (medication) "for his back complaints . . . , suggesting . . . plaintiff's back pain was not as constant or severe as plaintiff alleged it to be.").

Although the record does contain findings of limitations caused by Plaintiff's impairments — reduced strength and motor function in Plaintiff's upper extremities — those findings accounted for and are still consistent with the restrictions outlined by Dr. Isaza and incorporated into the RFC. (Tr. 351-52, 388, 394) (reduced triceps, wrist and grip strength on the right); (Tr. 426) (4/5 right triceps and grip strength on June 15, 2012). Therefore, the substantial evidence supports the ALJ's decision to give great weight to the opinion of Dr. Isaza.

Second, Plaintiff's argument that the restrictions outlined by the FCE (and adopted by Dr. Isaza) are inconsistent with the definition of light duty under the Social Security Act is without merit. The FCE documented Plaintiff's reduced grip strength. (Tr. 390). Nonetheless, his overall ability to lift and carry was still consistent with light work — up to 10 pounds occasionally and up to 20 pounds frequently. (Tr. 390). Second, Plaintiff relies on the FCE's finding that he was only capable of "static standing" for 2-4 hours. (Tr. 387, 390). However, Plaintiff ignores the FCE's additional finding that he was capable of walking "frequently"—i.e., up to 2/3 of an 8-hour workday. (Tr. 390). Therefore, Plaintiff's ability to stand *or* walk is likewise consistent with the performance of light work. *Compare* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds); *and* SSR 83-10, 1983 WL 31251, at *6 (Jan 1, 1983) ("'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday."); *with* (FCE, Tr. 390) (defining "frequent" as occurring up to 2/3 and "occasional" as up to 1/3 of an 8-hour workday).

Substantial evidence, therefore, supports the ALJ's RFC determination, as well as the ultimate finding of not disabled. Because the Court finds substantial evidence supports the RFC and ultimate finding, any other arguments directed to the RFC are without merit.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on July 20, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**